IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )    Cr.  No. 05-60137
                                    )
        v.                          )    ORDER
                                    )
JORGE LUIS ALCANTAR-GARCIA,         )
                                    )
                Defendant.          )
_____)

    Defendant is charged with possession with intent to distribute
methamphetamine.  Defendant moves to suppress all evidence obtained
as a result of a traffic stop on November 2, 2005.  Defendant also
moves to suppress evidence seized from his vehicle and home.

                            BACKGROUND

    Evidence adduced at the evidentiary hearing revealed the
following:

    In October of 2005, detective Dave Lewis of the Springfield
Police Department received information about drug activities

involving defendant Jorge Luis Alcantar-Garcia, from a confidential source.  Detective Lewis had received information in the past from the same source and it had proven accurate.  The confidential source had assisted in a controlled buy as well as provided information on two other occasions.

Lewis checked DMV records and learned that defendant was involved in a drug investigation in 2000 and that his driving privileges were suspended on October 2, 2005, for failing a breath test.  Lewis stated that he checked DMV records about a week prior to the stop at issue.

On November 2, 2005, the confidential source told Lewis of a specific location and time where defendant was going to drive a Dodge van and sell methamphetamine.  Surveillance revealed that defendant drove the Dodge van to the identified location at the identified time.  Detectives matched the driver of the van to photo identification of defendant.

On November 3, 2005, the source divulged that defendant would make a second delivery of a large amount of methamphetamine on that date at a specific time and place using the Dodge van.

Surveillance was set up at defendant's residence in Springfield, Oregon.  The defendant left the residence during the time frame provided by the confidential source.  The defendant was alone in the Dodge van.  Defendant was followed constantly by Detectives Keith Seanor and Matt Neiwert of the Springfield Police

Department, all the way to the point where defendant was stopped by Detective Crolly of the Springfield Police Department, who was driving a marked patrol car.  The defendant made no stops while driving from his residence to the point where he was stopped by Detective Crolly.  Lewis informed Detective Crolly that defendant's licence was suspended and instructed him to stop him for that reason.  Crolly stated that he had determined that he would arrest defendant for this reason.

Once stopped, Detective Crolly asked for defendant's driver's license.  Defendant provided an Oregon ID, explaining he did not have a driver's license.  The defendant stepped out of the car, after being asked to do so by Detective Crolly.  Detective Crolly performed a pat-down search and located a large lump in defendant's left pants leg pocket.  Detective Crolly removed this item and gave it to Detective Dave Lewis.  Detective Lewis then advised defendant of his Miranda rights.  Defendant told Detective Lewis he understood English.  The defendant was asked if he understood his Miranda rights and he nodded in the affirmative.  Defendant then added the words "a little."  Defendant was next asked what the item was which Detective Crolly had removed from his pants pocket.  Defendant replied, "Amphetamino."  Defendant said there was no more methamphetamine in the Dodge van and gave oral consent to search.

The defendant was transported to the Springfield Police Department.  Special Agent (SA) Dan Olsen of the Drug Enforcement

Administration (DEA) arrived at the police department to assist Detective Lewis in interviewing defendant. SA Olsen is fluent in Spanish.  Prior to any questioning, defendant was advised of his Miranda rights in Spanish by SA Olsen.  Defendant said he understood his rights and would answer questions.  Defendant said he had an ounce and a half of methamphetamine on him when he was stopped.  He initially said he was just carrying the drugs with him to work and was not going to use or sell the methamphetamine.  He was asked about his source of supply for methamphetamine and he replied he got the methamphetamine from a Mexican male, whose name he did not know.  Defendant said this source lived near 31st Street in Springfield and that the source drove a brown Chevy Cavalier. The defendant said the methamphetamine on his person were the only drugs he got from this individual and that he had no idea how to get in touch with this person.

     The defendant gave written consent to search his house, after denying there were large amounts of drugs or cash in the residence. A search of the residence at 6808 E Street, Springfield, Oregon, resulted in the recovery of $51,450 in U.S. currency.  The defendant was re-interviewed after the search and stated he believed the officers probably recovered $30,000 at his house.  He admitted the money was from selling drugs.  He admitted to selling drugs for the last year. He further admitted to buying six pounds of methamphetamine per month and selling it.  The defendant

4 - ORDER

admitted paying $8,000 per pound for the methamphetamine he purchases.

DISCUSSION

Defendant contends that the encounter between himself and the police constituted a seizure that was not justified by a reasonable suspicion on articulable facts.    Accordingly, defendant argues that the initial search was illegal and any alleged consent to search was not voluntary.

The detailed information provided by the confidential source, who had a record of proven reliability, along with corroboration of various details provided probable cause for the police to stop defendant. See Illinois v. Gates, 462 U.S. 213, 238 (1983) (informant's detailed information, plus corroboration by police officers, equaled probable cause to believe that defendants had drugs in their possession) and United States v. Reeves, 210 F.3d 1041, 1045-46 (9th Cir. 2000) (informant's information provided probable cause despite criminal record, as informant was reliable in the past). Moreover, the officers knew that defendant's driving privileges were suspended and that he was operating the Dodge van and consequently the police had probable cause to stop defendant for driving while suspended.[1]    In addition, the police could

---

[1]Defendant's contention that it was possible that in the week between the record check and the stop, defendant could have obtained a special permit to continue driving to go to work does

(continued...)

lawfully search defendant incident to arrest for driving while suspended, but it appears that the arrest occurred after the pat-down search. However, inevitable discovery would have led to the package. See United States v. Reilly, 224 F.3d 986, 994 (9th Cir. 2000) (discussing the inevitable discovery doctrine). The officers could have conducted a valid search incident to arrest.

Nonetheless, a Terry frisk was justified. A police officer may stop and briefly question an individual who he reasonably suspects of criminal activity or who he reasonably believes is the subject of an arrest warrant. Terry v. Ohio, 392 U.S. 1 (1968). Additionally, if the officer reasonably believes the suspect is armed, he may conduct a limited pat down search for weapons. Michigan v. Long, 463 U.S. 1032 (1983). Drug dealing and guns go hand in hand and thus it is reasonable to conduct a pat-down search for weapons. Because the officer had a reasonable suspicion that defendant was in possession of contraband, he could seize the package, but any further search of the item is beyond the limits of Terry. See Minnesota v. Dickerson, 508 U.S. 366, 373, (1993). Here the officers did not search the package, but only removed it before obtaining consent to search.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. As a procedural

---

¹(...continued)
not negate probable cause.

safeguard to protect this privilege against self-incrimination, the prosecution may not use any statement obtained by law enforcement officers as a result of "custodial interrogation," unless the defendant received Miranda warnings prior to the interrogation. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612-13, 16 L.Ed.2d 694 (1966).

A suspect will be held to be in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe he could not leave freely. Lowe v. United States, 407 F.2d 1391, 1397 (9th Cir. 1969). Custody is to be determined under all the facts of the case, and that "for one to be in custody, it is not required that he be in handcuffs or even that he be advised in express terms that he is under arrest." Rosario v. Territory of Guam, 391 F.2d 869 (9th Cir. 1968). The test to determine whether questioning is "interrogation" within the meaning of Miranda is whether "under all of the circumstances involved in a given case, the questions are 'reasonably likely to elicit an incriminating response from the suspect.' " United States v. Mata-Abundiz, 717 F.2d 1277, 1278-79 (9th Cir.1983) (quoting United States v. Booth, 669 F.2d 1231, 1237 (9th Cir.1981) (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980))). The operative test set forth by Bostick is that a seizure occurs only when "police conduct would have communicated to a reasonable person that

the person was not free to decline the officers' requests or otherwise terminate the encounter." <u>Bostick</u>, 501 U.S. at 439, 111 S.Ct. 2382.

To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide "whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>Stansbury v. California</u>, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (internal quotation marks omitted).   The inquiry focuses on the objective circumstances of the interrogation, not the subjective views of the officers or the individual being questioned. Id. at 323, 114 S.Ct. 1526.  That is, courts must determine whether "the officers established a setting from which a reasonable person would believe that he or she was not free to leave." <u>United States v. Beraun-Panez</u>, 812 F.2d 578, 580 (9th Cir.), modified by 830 F.2d 127 (9th Cir.1987); <u>see also</u> <u>Hayden</u>, 260 F.3d at 1066. The following factors are among those likely to be relevant to deciding that question: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." <u>Hayden</u>, 260 F.3d at 1066 (citing Beraun-Panez, 812 F.2d at 580). Other factors may also be pertinent to, and even

dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators; the Beraun-Panez/Hayden factors are simply some that recur frequently.

Here defendant was in custody and entitled to a reading of his rights before any incriminating statements could be elicited. Miranda rights were administered.

Even with <u>Miranda</u> warnings, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." <u>Miranda</u>, 384 U.S. at 475. In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, e.g., <u>Haley v. Ohio</u>, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; his lack of education, e.g., <u>Payne v. Arkansas</u>, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; or his low intelligence, e.g., <u>Fikes v. Alabama</u>, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; the lack of any advice to the accused of his constitutional rights, e.g., <u>Davis v. North Carolina</u>, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; the length of detention, e.g., <u>Chambers v. Florida</u>, the repeated and prolonged nature of the questioning, e.g., <u>Ashcraft v. Tennessee</u>, 322 U.S.

143, 64 S.Ct. 921, 88 L.Ed. 1192; and the use of physical
punishment such as the deprivation of food or sleep, e.g., <u>Reck v.</u>
<u>Pate</u>, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948. In all of these
cases, the Court determined the factual circumstances surrounding
the confession, assessed the psychological impact on the accused,
and evaluated the legal significance of how the accused reacted.
<u>Culombe v. Connecticut</u>, 367 U.S., at 603, 81 S.Ct., at 1879.   The
prosecution must prove at least by a preponderance of the evidence
that the statements were voluntary.   See <u>Lego v. Twomey</u>, 404 U.S.
477, 489 (1972).

The real issue here is a potential language barrier at the
scene of the stop when defendant admitted the contents of the
package.   The totality of the circumstances demonstrates that
defendant understood his rights and voluntarily waived them.
Accordingly, defendant validly gave consent to search his car and
home.   Defendant also validly waived his rights when providing
incriminating statements regarding the contents of the package.

There are five main factors to assess the voluntariness of
consent:

> (1) whether defendant was in custody; (2) whether the
> arresting officers had their guns drawn; (3) whether
> Miranda warnings were given; (4) whether defendant was
> notified that he had a right not to consent; and (5)
> whether the defendant has been told a search warrant
> could be obtained.

<u>United States v. Soriano</u>, 346 F.3d 963, 968-969 (9th Cir. 2003).
No one factor is dispositive in determining consent. <u>United States</u>

v. Chan-Jimenez, 125 F.3d 1324, 1327 n.3 (9th Cir. 1997).   The
circumstances of the consent to search defendant's home demonstrate
voluntariness as does his consent to search his van at the scene of
the stop.   SA Olsen read defendant his rights in Spanish and he
signed a consent form that informed him of the right to refuse.
The motion to suppress is denied.

DATED this _____ day of October, 2006.

United States District Judge

11 - ORDER